Glos v. Clark.

----

## Emma J. Glos v. Alexander Clark.

97   609
d199s 147

1. PARTITION — *Accounting for Taxes Paid by a Co-tenant in Possession.*—Where the owners of land sustain to each other the relation of co-tenants and one of them in possession pays the taxes on the whole, and the one not in possession goes into equity to establish his rights, it is just and equitable that he should be compelled to account to the other for his proportion of the taxes paid on such lands.

2. ESTOPPEL—*By Adjudications Under the Burnt Records Act.*—In a proceeding by co-tenants under the burnt records act, where nothing

but title is involved or adjudicated, the parties are not estopped in a subsequent proceeding in partition to insist upon an accounting of rents and profits and for taxes paid upon the land in question.

3. INTEREST—*To be Allowed Only When Authorized by the Statute.*— Interest is a creature of the statute, and is allowable only when authorized by it. Although it is allowable for money paid out or received for the use of another, and for a vexatious delay of payment when due, it is frequently disallowed when its payment, though due, is not vexatiously delayed.

**Bill for Partition and Cross-bill for an Accounting.**—Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Affirmed. Opinion filed November 1, 1901.

**Statement.**—The appellant filed her bill for the partition between herself and appellee of eight lots of land in certain additions to Evanston, in Cook county, alleging that she is the owner of the undivided five-eighths thereof, and Clark is owner of the other undivided three-eighths, and that their titles were established by a decree of the Circuit Court of Cook County rendered August 10, 1898, in a burnt record proceeding, affirmed by the Supreme Court. Clark v. Glos, 180 Ill. 556.

The prayer of the bill is simply for partition of the premises.

Clark answered the bill, and filed a cross-bill, in which he set out, in detail, his claimed equities, including his right to an accounting from Mrs. Glos, because of the payment by him of certain taxes and assessments, and the placing of some improvements on one of the lots that was isolated from the other seven.

The prayer of the cross-bill is for an accounting, accompanied by an offer by Clark to allow for rents received by him.

Mrs. Glos' answer to this cross-bill sets up that all moneys paid by Clark for taxes, assessments and improvements of any character were paid under a claim of exclusive ownership of the whole premises and while holding adversely to Mrs. Glos and denying her title; that such payments were not made with her knowledge or consent, and were purely

voluntary on his part, made of his own wrong for the purpose of acquiring a limitation title; that Clark took possession as a mere interloper and never acknowledged that Mrs. Glos had any right whatever in the land until after the final decision in the Supreme Court at the October, 1899, term. That he has received all rents and profits since 1890, and that the same are an equitable equivalent and set off for said outlays made by Clark.

The answer also sets up the burnt records decree as a final adjudication of the rights of the parties in the land or growing out of it prior to that date and as to all improvements on the same, and that under said decree Clark's interest consists merely of an undivided three-eighths of said premises as they stood on the date of said decree, August 10, 1898.

The decree found the facts substantially as testified to by Mr. Clark, and is as follows, omitting formal parts:

"2. That the complainant, Emma J. Glos, at the time of the filing of said bill was seized in fee simple absolute of an undivided five-eighths ($\frac{5}{8}$) of lots one (1), two (2), three (3), fifteen (15), sixteen (16), seventeen (17), and eighteen (18), in block five (5) of Merrill Ladd's addition to Evanston and of lot fourteen (14), in block one (1), Iglehart's addition to Evanston, in said Cook county; and that Alexander Clark, one of the defendants in said bill and the cross-complainant in the cross-bill, was at that time seized in fee simple absolute of the remaining undivided three-eighths ($\frac{3}{8}$) of said premises, as tenant in common with the said Emma J. Glos; that the titles of said respective parties in the premises aforesaid were established and confirmed by a decree of the Circuit Court of Cook County, Illinois, rendered August 10, 1898, at the July term, 1898, of said court, in a proceeding brought in said court by the said Emma J. Glos to confirm and establish her title to said premises under the provisions of the statute of this State, commonly known as the burnt record act, being an act entitled 'An act to remedy the evils consequent upon the destruction of any public record by fire or otherwise,' approved and in force April 9, 1872, in which proceeding the said Clark filed his cross-petition, praying that his title to said premises might be established and confirmed, and that on a full hearing of said cause the said court by its

said decree confirmed and established in the said Emma J. Glos and said Clark the title in fee simple absolute, as aforesaid; that the said Clark prayed and perfected an appeal from the said decree to the Supreme Court of Illinois, and that said court on a consideration of said cause affirmed said decree at the June term, 1899, of said court, and that a certified copy of said order of affirmance has been duly filed in the office of the clerk of said Circuit Court, and that said decree is now in full force and effect.

3.   And the court further finds that the said lot fourteen (14) of block one (1) of Iglehart's addition to Evanston, is now in the actual possession of one Edward Anderson, who holds under a lease executed by said Clark, and that the said Anderson has gone into possession under said Clark since the entry of said decree by the Circuit Court, as aforesaid, and that he holds the same subject to the effect of said decree; that the foregoing real estate is the only real estate held in common by the said Emma J. Glos and said Alexander Clark, and that no other parties than the said Emma J. Glos and said Alexander Clark have any title in or to the said described premises, or any part thereof, in possession, remainder, reversion or otherwise.

4.   And the court further finds that the said Alexander Clark and said Emma J. Glos are both desirous that a division and partition of said described premises should be made between them, according to their respective rights and interests therein, and that in case the same can not be divided among the owners thereof without manifest injury or prejudice to the parties interested therein, that the same may be sold and the proceeds thereof divided among such parties, according to their respective rights and interests, but that the said Clark and said Emma J. Glos are unable to agree among themselves as to said division of said property.

5.   And the court further finds that on or about the 7th day of November, 1874, a judgment was entered against said Ladd; that while said judgment was pending and unsatisfied, on February 13, 1875, said Ladd and his wife conveyed by warranty deed said property to one Paul Thurlow; that on June 26, 1879, a sheriff's deed was issued to Charles B. Hosmer, of said premises, under a sale of the same under an execution issued on said judgment, and that said Charles B. Hosmer, on March 1, 1888, by quit-claim deed, conveyed an undivided one-half of the interest so acquired in said premises to his son, Edward D. Hosmer; that on August 27,

1890, Paul Thurlow and his wife conveyed all of their interest in said premises to said Alexander Clark; that on January 3, 1891, said Charles B. Hosmer died testate, and his will was probated in the Probate Court of Cook County, Illinois; that under said will he divided his estate into four (4) equal shares, one of which he gave to Arthur B. Hosmer; one share to Edward D. Hosmer as trustee for his daughters, with full power in the said Edward D. Hosmer, as such trustee, to sell and convey said interests; that in the inventory filed in the probate proceedings under said will an undivided one-half interest in the premises aforesaid was set out as the property of the said Charles D. Hosmer; that by virtue of said will and his former holdings, the said Edward D. Hosmer became vested in his own right in an undivided five-eighths interest in any title to said premises which was acquired by said Charles B. Hosmer by said sheriff's deed; that on June 8, 1891, said Edward D. Hosmer conveyed his individual five-eighths interest aforesaid to Emma J. Glos, the said complainant, for the consideration of two hundred and fifty dollars, ($250) and that at the time said sale was made the said premises were worth, with a good title thereto, free from all liens and incumbrances, the sum of not less than three thousand dollars ($3,000).

6.    The court further finds that in the fall of 1890 said Alexander Clark entered into negotiations with Edward D. Hosmer as the owner of an undivided one-half of an interest in said property, and the agent for the other undivided half owned by his father, which interests were acquired under the execution sale aforesaid, in regard to the purchase of such interests; that in pursuance of such negotiations the said Clark made investigation as to the said execution title held by the said Hosmers, and that through incorrect information the said Clark was led to believe that the said execution title was without force and effect, and void; that the said Clark, relying upon such incorrect information and believing that the said execution title was of no force, acquired the title of Paul Thurlow to said premises aforesaid, and took possession of the said premises, which were then vacant and unoccupied, under said title from said Thurlow; that shortly prior to November 3, 1890, the said Clark had an interview with the said Edward D. Hosmer, who was still the owner of an undivided one-half interest aforesaid, and also the agent of the other half, in which interview the said Clark reported to said Hosmer the result of his investigation as to said execution title, and informed the said Hosmer of his belief that said title was

void; that said Hosmer then and there agreed with the said Clark that he would have the said title investigated and also certain tax titles controlled by him, and inform said Clark as to what he and his father would take for a quit-claim deed of their interest in the property acquired through such execution sale and through such tax titles; that the said Hosmer then and there, representing himself and his father, agreed with the said Clark that it was a wise and proper thing for the said Clark to proceed to pay the taxes due upon said premises and protect the same from tax sales, and that said Clark, relying upon said acquaintance of said Hosmer and upon his investigation in regard to the execution title, and believing that the same was void, and that the deed from Thurlow to him conveyed to him a good title to said premises, with the acquiescence and consent of said Edward D. Hosmer, for himself and his father, paid up all taxes and assessments then due upon said premises, and continued to pay all taxes and assessments subsequently becoming due, and has paid all taxes and assessments levied upon the said premises since that date up to the present time, and has paid out for such taxes and assessments a sum of money in excess of two thousand dollars ($2,000); and that said Clark is entitled to be reimbursed by the said Emma J. Glos for five-eighths ($\frac{5}{8}$) of such expenditures for such taxes and assessments since June 8, 1891, (the date of the conveyance to her by Hosmer of five-eighths of the premises), except as to the portion paid by him by reason of the improvements on lot fourteen (14) aforesaid, and that all of such payments were made by said Clark while claiming the whole title adversely to said Emma J. Glos and prior to the denial of the petition for rehearing in the burnt record suit aforesaid, in the Supreme Court.

7. And the court further finds that at the time said Clark acquired said conveyances from said Thurlow of said premises, the improvements thereon were scant and meager; that since that time the premises have been improved with water and sewer in some of the streets abutting on the same, and water and sewer connections laid for some of the lots of said premises; that the street has been curbed and paved, and cement sidewalks built in front of some of said lots, and large assessments made for such improvements, and that all of said assessments have been paid by said Clark, and are part of the sum aforesaid; that no portion of said amount has ever been repaid to said Clark by said Edward D Hosmer or Charles B. Hosmer, nor the said Emma

J. Glos, or any person claiming title to said premises under them; that their interests in said premises have been greatly enhanced in value by such improvements and payments by said Clark; that neither the said Hosmers nor the said Emma J. Glos has ever made any objection to the payment of such taxes and assessments by said Clark, although each of them had full knowledge that he was making such payments.

. 8.   And the court further finds, that at the time of the conveyance to said Clark by said Thurlow, as aforesaid, the said premises were being wasted by trespassers; the fences around the same were being torn down and carried away, and the black earth hauled away from the surface thereof, and the value of the premises being greatly depreciated thereby, and that said premises were receiving no care and attention from the said Edward D. or Charles B. Hosmer, or any other person claiming any title thereto; that said Clark, believing that the said conveyance from said Thurlow vested a good title to him in said premises, on account of the mistake of the said Clark as to the condition of the execution title aforesaid, took possession of said premises, and in order to protect the same from waste, moved a building upon said lot fourteen (14) of block one (1) in Iglehart's addition, in the fall of 1890, and put a party in possession thereof, with instructions to protect said premises from trespassers; that he afterward leased the remaining seven lots of said premises for gardening purposes, and that the said Edward D. and Charles B. Hosmer had full knowledge of the taking possession of said premises by the said Clark, and the placing of the building upon said lot fourteen (14), and that no objections were ever made by them, or any of them, or by said Emma J. Glos, to such action on the part of said Clark, and that at the time the said Emma J. Glos acquired said title under the quit-claim deed from said Edward D. Hosmer, aforesaid, she had notice that said Clark was in open possession of said premises, as aforesaid, and that he had located the said building upon said lot fourteen (14), as aforesaid, and had full knowledge of the same from July, 1892.

9.   And the court further finds that during the time the said Clark has been in possession of said premises he has leased all of the lots, except lot fourteen (14) aforesaid, for gardening purposes, and has received a small annual rental therefor, and that the said Emma J. Glos is in equity entitled to her proportion of such rental from June 8, 1891, but that after crediting her with such amount she would

still owe the said Clark an amount largely in excess of the amount so found due to her from said Clark.

10.  The court further finds that said lot fourteen (14) of said premises is isolated from the remaining lots and that the value of said lot fourteen (14), exclusive of said improvements placed thereon by said Clark, is much less than three-eighths ($\frac{3}{8}$) of the value of all of the said lots, exclusive of such improvements, and that in any partition made of said premises between said Clark and said Emma J. Glos, or those claiming under her, the said lot fourteen (14) should be in equity set over to said Clark as a portion of his three-eighths ($\frac{3}{8}$) interest in said premises, in case it shall be found that said premises are susceptible of division and partition; and that in the event the said premises are not susceptible of division and it should be necessary to sell the same, and that on account of the improvements made by said Clark upon said lot fourteen (14) an increased price should be received for said premises, then the portion of such enhanced price on account of said improvements should be set over to said Clark, in addition to the three-eighths ($\frac{3}{8}$) of the value of all the premises, exclusive of such improvements, to which he would be entitled under such partition sale.

11.  And the court further finds that under the pleadings, proceedings and record in the burnt record proceedings, in the Circuit and Supreme Courts aforesaid, the said Alexander Clark is not barred from the relief prayed for by him in his cross-bill in this case, and that the decree entered in the Circuit Court of said proceedings, as aforesaid, is not a final adjudication of the rights and interests of said Clark and said Emma J. Glos as to the relief prayed for by said Clark herein.

12.  And the court further finds that said Emma J. Glos has never made any application to said Clark for the possession of her undivided five-eighths ($\frac{5}{8}$) interest in said premises.

13.  And the court further finds that said lot fourteen (14) of block one (1) of Iglehart's addition aforesaid, at the time said Clark took possession of the same under the deed aforesaid from said Thurlow, was vacant and without any improvement thereon, and that all of the improvements now standing upon said lot fourteen (14) have been placed thereon by said Clark.

14.  And the court further finds that five-eighths ($\frac{5}{8}$) of the net profits from the rentals received from said lot fourteen (14) by said Clark since June 8, 1891, which are chargeable to the value of the lot without the improvements upon

the same by said Clark, should be credited to Emma J. Glos; that is, she should receive credit for five-eighths (⅝) of that part of the net profits from rentals from said lot fourteen (14) since June 3, 1891, which bears the same ratio to the entire net profits from rentals from said lot fourteen (14), for the period aforesaid, as the value of said vacant lot bears to the value of said lot fourteen (14) with the improvements thereon, as said value may be ascertained by the commissioners hereinafter named.

15. And the court futher finds that the said Alexander Clark should pay three-eighths (⅜) of the cost of this proceeding, and the said Emma J. Glos should pay five-eighths (⅝), and that any amounts found due upon a final accounting in this cause from either party in this proceeding shall be a lien upon their respective interests in favor of the other party thereto.

16. It is therefore ordered, adjudged and decreed by the court that the complainant, Emma J. Glos, is entitled to five-eighths (⅝) of the premises, in fee simple, as aforesaid, and that said Alexander Clark, cross-complainant, is entitled to the remaining three-eighths (⅜) of said premises, in fee simple, and that a division and partition of said premises be made (naming the commissioners and their duties).

17. It is further ordered, adjudged and decreed by the court, that this cause be referred to master in chancery of this court, George N. Stevens, to take an accounting between the parties hereto in regard to said premises" (in accordance with the foregoing, and minutely specifying the method of accounting to be followed).

The decree was not satisfactory to either litigant and has been brought up for review, on appeal by Mrs. Glos. Clark, also, has assigned cross-errors upon the record.

Enoch J. Price, attorney for appellant.

Alexander Clark, attorney *pro se.*

Mr. Justice Shepard delivered the opinion of the court.

The contention of Mrs. Glos that because Clark always, down to the decree of August 10, 1898, denied her right to any of the premises, and held possession and paid taxes adversely to her and in support of his own claim of title to the whole, he can not now require her to account with him, is not well founded.

It is only from the time she obtained the title to five-eighths of the property that the decree requires her to account. From that time she and Clark held to each other the relation of co-tenants. She knew that Clark was paying the taxes on the whole property, and, in a sense, acquiesced in his doing so. It is true that Clark was all the time in possession and denying her title, but when she went into equity and established her right to five-eighths of the property, it was only just and equitable that she should be compelled to account for five-eighths of the taxes that Clark had paid. Such payments served as much to her own protection as to his, and there was no error in requiring her to do what was equitable on her part. DeWalsh v. Braman, 160 Ill. 415; Ebelmesser v. Ebelmesser, 99 Ill. 541.

But Mrs. Glos further contends that the "Burnt Records" decree of August 10, 1898, constitutes an adjudication of all of Clark's rights; that he might have, and did in fact, set up in that proceeding his claim for reimbursement in the matters spoken of and was denied it.

The questions in that case seem to have been only those of title. Both parties claimed the entire land as their own, and denied the right of the other to any part of it. Nothing but title was involved or adjudicated, and although much of the same evidence was heard that was presented in this case, it was, as the Supreme Court there held, gone into merely for the purpose of showing the good faith acts of Clark in the support of his claim of title, and laches on the part of Mrs. Glos. As the Supreme Court said in its opinion in that case, the subject of rents and profits, etc., would be "more properly before the court for consideration in a partition proceeding," and accordingly held that no error was committed in not ordering an accounting in that suit. Clark v. Glos, 180 Ill. 556.

Coming now to Clark's cross-errors, they may be epitomized, so far as they have been argued by him, and as stated by him in his brief, as follows:

"That the decree should be modified so that he should receive five-eighths of all expenditures made by him in regard to the premises, and interest thereon, and that the

allowance to be made for Emma J. Glos should be simply five-eighths of a reasonable rental for lot fourteen (14) without any improvements, and that she should be allowed interest on her share of all the rentals from the date of the receipt thereof by Clark."

The expenditures for which he claims, but was not allowed, were made before either he or Mrs. Glos had any title, although he was in possession. Clark was, before he acquired his title to three-eighths of the property, which was after Mrs. Glos had acquired her five-eighths, a mere trespasser upon the property. Clark's argument that because of some talk he had with the Hosmers about paying the taxes, Mrs. Glos became bound, when she bought of them, by his equities as between himself and the Hosmers, seems to us to be entirely fallacious.

It is a plain inference from the evidence that prior to the time when Mrs. Glos acquired her five-eighths of the property, everything in the way of taking possession of the premises and making disbursements on account thereof, by Clark, was done in defiance of the Hosmers' interest and in the belief by Clark that Thurlow's apparent title was good and that the Hosmers' was not. Giving to Clark the right to an accounting from Mrs. Glos from the date of acquisition of title to her was all, in that respect, that Clark can equitably ask for.

The claim of Clark that Mrs. Glos should be credited in the accounting, concerning lot 14, with only the reasonable rental of the lot exclusive of improvements, is not made to appear to be justifiable. The decree makes allowances in Clark's favor with reference to the improvements on lot 14 which probably, as nearly as possible, even up all the particular equities growing out of that lot and improvements, and we are not disposed to disturb it. Exact justice is frequently more theoretical than practical, and where, considering the whole case, substantial justice has been accomplished, minor refinements must be disregarded.

It would seem that as to interest it might well have been allowed in favor of both parties, on taxes, etc., paid, and on rentals received.

It is said in the brief of appellee that the learned chancel-

lor who entered the decree refused interest because of the authority of Snell v. Taylor, 182 Ill. 473.

Interest is a creature of the statute, and is allowable only when authorized by the statute. Although it is allowable for money paid out or received for the use of another, and for a vexatious delay of payment when due, it is frequently disallowed when its payment, though due, is not vexatiously delayed. The controversy in this case has not been so one-sided as to justify us in holding that the delays on either side have been so excessive as to warrant us in reversing the conclusion the learned chancellor reached. The decree seems on the whole to be a most equitable settlement of the controversy, and no substantial error in it having been pointed out by either party, our duty is to affirm it, which we accordingly do, at the costs of appellant. Affirmed.